## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**REGINA ELLISON**                                **CIVIL ACTION**

**VERSUS**                                        **NUMBER 08-39-FJP-DLD**

**MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY**

## MAGISTRATE JUDGE'S REPORT

Plaintiff Regina Ellison seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.

### Background

Regina Ellison protectively filed an application for benefits on August 5, 2005, alleging a disability onset date of July 18, 2005, due to a "disabling condition." (TR 43).[1] The application was denied initially and on reconsideration, and a hearing subsequently was held on April 14, 2007.  The plaintiff, her counsel, and a vocational expert appeared and testified at the hearing. (TR 157-172) Plaintiff, who was born on November 1, 1962, was 44 years old at the time of the hearing, and had completed one semester of college.

---

[1] Plaintiff does not identify her "disabling condition," other than to state that "muscle spasms, left shoulder spasms, and severe pain" limit her ability to care for her personal needs.  (TR 68). Plaintiff further states that before her illness, she was able to handle everyday stress, but now the constant thought of her illness brings on panic attacks.  Her sleep is affected because she keeps hearing the words "I'm sorry" from the doctors over and over in her sleep, and she can "see the life leaving" her body and there's nothing she can do about it."  (TR 48).

1

Her past relevant work was as a community worker, housekeeper, and manager of a housekeeping crew.

In denying plaintiff's claims, the Commissioner's administrative law judge ("ALJ") reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. § 404.1520(b)-(f) & 416.920(b)-(f).[2] The first two steps involve threshold determinations.  The ALJ initially determined that plaintiff had not engaged in substantial gainful employment since her alleged onset date of disability, thereby satisfying the first step in the sequential process.  (TR 16) At the second step, the ALJ determined that plaintiff suffered from the following severe impairments: hypertension and breast cancer. (TR 16) Plaintiff does not dispute the ALJ's determinations at the first two steps of the sequential process. (rec. doc. 7)

At step three of the process, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or were medically equivalent to the criteria of one of the listed impairments set forth in the Commissioner's regulations at 20 C.F.R. pt. 404, subpt. P, Appendix 1.  (TR 17)  The ALJ then determined that plaintiff had a functional capacity[3] ("RFC") to perform sedentary work which allowed her to sit, stand, and walk at will.

At step four of the sequential process, the ALJ determined that plaintiff was unable to return to any of her past relevant work. (TR 19)  The burden then shifted to the

---

[2]  *See,e.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[3]Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), *citing* SSR 96-8p.

Commissioner at step five of the process to show that plaintiff could perform significant numbers of jobs existing in the national economy, consistent with plaintiff's medical impairments, age, education, past work experience (if any), and RFC.  *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001).  Based upon the substantial evidence in the record, including the testimony of a vocational expert during the administrative hearing, and relying on the medical-vocational guidelines as a framework for decision, the ALJ determined that plaintiff was able to perform a significant number of jobs in the national economy, including positions such as cashier, sedentary; surveillance officer; and information clerk-receptionist. (TR 19-20)  The ALJ therefore concluded that plaintiff was not disabled for purposes of the Social Security Act.  (TR 20)

### Statement of Errors

In her present appeal, plaintiff alleges the following grounds for reversal of the Commissioner's decision: (1) the ALJ violated SSR 96-8p by impermissibly excluding what she considered to be non-severe impairments from Ms. Ellison's specific limitations established by the record; (2) The ALJ erred in evaluating Ms. Ellison's subjective complaints of pain and in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. Sec. 404.1529 and in making a credibility finding not based upon substantial evidence; (3) the ALJ failed to meet her burden of proof when her hypothetical to the VE did not adequately reflect the entirety of claimant's impairments; and (4) The ALJ failed to comply with SSR 02-01 p in not considering the impact of claimant's obesity on her ability to work.

***Medical History***

The medical records in this case are sparse.  The first visit contained within the administrative record is an examination by Dr. Reynando Banks on June 20, 2005, due to plaintiff's complaints regarding dizziness associated with her blood pressure medication. This examination did not reveal any abnormal findings, and noted plaintiff's weight of 252 pounds. Plaintiff was next seen on July 18, 2005, for a diagnostic mammogram, which revealed an abnormal 3 cm mass in the upper left breast, highly suspicious for malignancy. Plaintiff returned to Dr. Banks on August 1, 2005, for a follow-up visit regarding her blood pressure medication, and again, there were no abnormal findings. (TR 112)

On August 18, 2005, plaintiff was examined by Dr. Peter Bostick, who noted that she was being treated for asthma, hypertension, and anemia.  (TR 99) The only medical record from Dr. Bostick is a one page document, along with the results of the mammogram.  It is unclear from Dr. Bostick's notes whether he recommended further treatment for the lump in the plaintiff's breast, although he did note that there was a lump. There is no mention of chronic neck or back pain, or any problems with obesity.

On October 27, 2005, plaintiff was examined by Dr. Linda Stewart on behalf of Disability Determinations Services. Dr. Stewart noted that plaintiff was 4'11", and weighed 244 pounds.  Dr. Stewart made the following observation:

> Musculoskeletal: Normal range of motion of the back and shoulder.  For a patient with her weight, particularly the flexion.  Because of her complaint of pain in the left shoulder, thorough range of motion exam was done and found to be totally within normal range of extension, flexion, internal rotations, adduction, abduction, and back greater than forward elevation.  (TR 74)

Dr. Stewart diagnosed the plaintiff with breast mass (possible cancer), hypertension, morbid obesity, and rheumatoid arthritis by history. (TR 74). On October 28, 2005, plaintiff

4

saw Dr. Banks for a follow-up on her breast mass, and her blood pressure check.  Dr. Banks' handwritten notes state that he "told patient that she has to get breast bx.  Not something to wait on."  His notes also state that plaintiff told him "she will not be seen at EKL.  Awaiting Medicaid."  (TR 111).

It is at this point that plaintiff underwent a Residual Functioning Capacity ("RFC") exam.  Plaintiff's RFC of November 10, 2005, included a primary diagnosis of a breast mass/possible cancer, and morbid obesity, along with possible hypertension and rheumatoid arthritis.  The limitations established by the RFC were:1) occasional lifting or carrying 50 pounds; 2) frequently lifting and carrying 25 pounds; 3) standing or walking for about 6 hours in an 8-hour workday, with normal breaks; 4) sitting about 6 hours in an 8-hour workday, with normal breaks; 5) unlimited pushing and/or pulling; and 6) no postural limitations.[4]  (TR 76-77) This RFC did not include any records from plaintiff's treating physician, but plaintiff self-reported that she was able to perform light household chores, drive, shop, groom, and prepare light meals, all statements which appeared credible and consistent with the objective evidence.  (TR 79, TR 59-61).  Plaintiff complained about the stress related to thinking about the mass in her breast, but not about any physical pains, or complaints regarding the side effects of any medication.

The next medical record is an April 5, 2006, visit with Dr. Banks.  Plaintiff's chief complaints at that time were that she "needs two referrals (oncology)," her "back pain (chronic), leg pain, and her blood pressure."  Dr. Banks noted that she had not yet had

---

[4]20 CFR §404.1567, defines the physical exertion requirements of medium work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

surgery for the breast mass.  (TR 109) Plaintiff returned to Dr. Banks on October 10, 2006, complaining about her lower back, legs, feet, and pain/sinus problems.  Dr. Banks did not address the breast mass issue at this appointment. (TR 104) At a follow-up visit with Dr. Banks on November 7, 2006, Dr. Banks noted that the plaintiff did not have Medicare or Medicaid and did not want to go to EKL because she could "die at EKL getting adequate care."  Dr. Banks advised the plaintiff she "should be aggressive."  (TR 103) There is nothing in the record to suggest that plaintiff followed-up with a physician for her chronic back pain or leg pain.

The plaintiff was then consultatively examined on November 18, 2006.  Her major complaints were high blood pressure, asthma, and recurrent low back pains.  She stated that she sometimes did not sleep well, and that her medications made her tired and sometimes nervous.  When discussing her low back pain, she localized the pain mainly in the left sacroiliac junction area and left buttock.  She ambulated without difficulty, without a cane, and without a limp. She demonstrated normal range of motion of the neck with no complaints.  She had a limited range of motion in the lower back, complaining of pain in the left buttock and leg.  She could squat about halfway down and rise without support. Although she needed to shift her weight back and forth while standing, and could only stand for 10 to 20 minutes, she could sit without any problems. (TR 82). The examiner found that plaintiff was obese, had asthma, and lower back pain from a 2001 auto accident.  There were no complaints regarding chronic neck pain.  Based on this exam, the plaintiff was found to be capable of performing light work. 20 CFR §404.1567 defines light work as work involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. "Even though the weight lifted may be very little, a job is in this

6

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. It is at this point that the medical records fall silent.

### Governing Law

In reviewing the Commissioner's decision to deny disability and SSI benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.* A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id.* . In order for the Court to find there is "no substantial evidence" supporting the ALJ's conclusions, this court "must conclude that there is a 'conspicuous absence of credible choices' ..." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983) (*citing Hemphill v. Weinberger*, 484 F.2d 1137 (5th Cir.1973)).

The overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). If a claimant proves that she no longer is able to work in her prior job, then the burden shifts to the Commissioner

to show that there is some other type of substantial gainful activity that the claimant can perform. *Id.* Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform her past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis, the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform. *Perez v. Schweiker*, 653 F.2d 997, 999-1000 (5th Cir. 1981). If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove her inability to perform those jobs. *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980).

Obesity by itself is not a Listed impairment, but may still enter into a multiple impairment analysis, but only by way of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system. *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003). Also, if an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Picou v. Commissioner of Social Sec.,* Slip Copy, 2008 WL 237017 (W.D. La.2008*); Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir.1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987). "Conflicts in the evidence are for the Secretary and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990) (*citing Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir.1983).

### *Discussion*

The issue before this Court is whether the Commissioner's finding that Regina Ellison is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

Plaintiff does not dispute the ALJ's finding relating to plaintiff's hypertension or breast cancer, but states that she suffers from the following additional conditions: (1) chronic neck and back pain; (2) asthma; (3) morbid obesity, and (4) side effects from her medications; conditions which, when combined with her hypertension and breast cancer, render her disabled.  Plaintiff alleges that these additional conditions were not considered by the ALJ in either the RFC or the hypothetical presented to the vocational expert.

Although plaintiff approaches the case from various angles, the key to the decision lies in the hypothetical presented to the vocational expert.  Plaintiff complains that the hypothetical did not take into account all of plaintiff's impairments, either singly or in combination, nor did the ALJ properly consider plaintiff's subjective complaints.

Turning first to the plaintiff's impairments or objective medical condition, a review of the decision and the record show that the ALJ actually included the plaintiff's various impairments in her determination, including those named by the plaintiff in her objection; she simply did not provide a fulsome discussion of the impact of those limitations on a point-by-point basis.  The ALJ's decision clearly discussed plaintiff's asthma as being "relieved by an inhaler"; she discussed  the car accident of 2001 which resulted in a lower back injury aggravated by standing; and she noted her weight of 244 pounds. (TR 16), even though the plaintiff did not testify about all her ailments.   That the ALJ considered both the medical record and the plaintiff's testimony is shown through the ALJ's treatment of the RFC.  Although the initial RFC concluded that the plaintiff was capable of "medium work", and the subsequent RFC indicated that plaintiff was capable of "light work,"  the ALJ further reduced plaintiff's RFC at the hearing to "sedentary work," with additional limitations that allowed plaintiff to sit, stand, and walk at will.   The ALJ's finding that the plaintiff was

able to perform jobs at the sedentary level necessarily considered the impact of her additional impairments on her ability to work.  While the ALJ could have better explained the rationale behind  the downward modification of the RFC in her decision, there is no reasonable explanation for this change by the ALJ, other than the ALJ considered the combined impact of the plaintiff's impairments on her ability to perform medium work and light work, and found that she was only capable of sedentary work with limitations. The ALJ's failure to specifically discuss each and every condition and its resultant  limitations thus did not materially affected the outcome in this case because her RFC incorporated the plaintiff's additional limitations.

Furthermore, a review of the medical evidence indicates additional support for the ALJ's conclusion.  As far back as August, 2005, plaintiff was being treated for asthma and hypertension, both of which were controlled by medication.  The plaintiff was diagnosed with morbid obesity in October, 2005, according to the records, but had a normal range of motion of the back and shoulder. (TR 74) There is no indication in the record how, if at all, plaintiff's condition was impacted by her obesity.  Although the plaintiff complained of recurrent low back pain from April 5, 2006 through November 28, 2006,  plaintiff's complaints of recurrent low back pain prior to April 5, 2006, are lacking in the medical evidence.  Between November 28, 2006, and April 14, 2007, there is no medical evidence in the record that reflects any physician visits whatsoever.  The medical evidence actually goes against a reduction in the RFC.  The ALJ obviously gave weight to the plaintiff's

testimony at the hearing and gave her the benefit of the doubt on the objective medical evidence when she reduced the RFC to sedentary.[5]

Plaintiff nevertheless complains that the ALJ fell short on the hypothetical given to the vocational expert when she failed to include the debilitating effect of plaintiff's medications, a subjective complaint.   At the hearing, plaintiff testified that due to the heavy dosage of her two main medications, she is unable to function normally as the medications leave her in almost a "catatonic state."  Plaintiff presented a hypothetical to the VE which included these side effects, and the VE found there were no jobs the plaintiff could perform given the plaintiff's version of the hypothetical.   It is clear, however,  that plaintiff's testimony regarding this issue was the very testimony which the ALJ determined was not credible.

Plaintiff contends  that the ALJ did not properly evaluate her subjective complaints and failed to make the requisite credibility findings when she rejected plaintiff's testimony. The law requires the ALJ to make affirmative findings regarding a plaintiff's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir.1981)).  The ALJ did not totally reject the plaintiff's testimony. What the ALJ  found is  that the plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged symptoms" but that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms

---

[5]  At the hearing, plaintiff's testimony about her condition was different from that found in the medicals. She testified that she uses a cane to help her shift weight between her left and right legs, but that the cane was not prescribed.  She testified that she was completely unable to do any household chores, any driving, and could only sit, stand or walk for 15 or 20 minutes, but only if she did not take her medications. (TR 159) During the hearing, plaintiff, who was represented by counsel, never testified about any problems regarding her obesity, chronic neck pain, or asthma.

are not entirely credible." (TR 18)          Although the ALJ could have been more expansive in her explanation, she included sufficient information in her determination to support her decision.  Additionally, there is no medical evidence to support plaintiff's claims regarding the side effects of her medication, other than her report to the consultative examiner in November 2006 that her medication made her tired and sometimes nervous. That evidence hardly supports her testimony that her medications leave her in a "catatonic state."  There is, however, sufficient evidence to support the ALJ's credibility determination, and the ALJ thus adequately explained her reasons for rejecting plaintiff's subjective complaints.  *Falco*, 27 F.3d at 164. On the objective medical evidence presented, the ALJ acted well within her discretion in concluding that plaintiff's subjective complaints were not of a disabling severity.  *E.g., Harrell*, 862 F.2d at 479-82; *Dominick v. Bowen*, 861 F.2d 1330, 1333 (5th Cir. 1988); *Hollis v. Bowen*, 837 F.2d 1378, 1384-85 (5th Cir. 1988). Based on a review of the record and considering that the ALJ is afforded considerable deference in making her credibility determination, the court finds that the ALJ's findings regarding Plaintiff's subjective symptoms should be upheld.

The law requires only that the ALJ must "incorporate reasonably all disabilities of the claimant recognized by the ALJ," in the hypothetical and must afford the claimant or her representative the opportunity to correct any deficiencies in the ALJ's question by mentioning or suggesting to the expert any purported defects. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  In this case, the ALJ reasonably incorporated those disabilities found in the medical evidence and  in plaintiff's testimony in  the VE hypothetical when she cited the RFC as sedentary,  and she afforded the claimant's representative an opportunity to cross-examine the expert. (TR 156).

12

Thus, although the hearing decision in this case is not expansive in its analysis, the Court does not find any reversible error from the ALJ's failure to more fully discuss the impact or lack thereof regarding the medical evidence and findings, including plaintiff's chronic neck pain, asthma, morbid obesity, and complaints of side effects of medications. As a general matter, the ALJ is not required to specifically explain each piece of evidence that she accepts or rejects. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). To the extent that Social Security Ruling 96-8p might require more articulation in this case regarding assessment of plaintiff's RFC, any error by the ALJ would at best be harmless.[6]

Plaintiff also provided post-hearing medical evidence on October 18, 2007, and argues that the Commissioner should have considered this evidence but failed to do so. The new evidence consisted of records from Metropolitan Health Group for heat packs/gentle massage/electrical stimulation treatments for an injury due to an auto accident of August 11, 2007. (TR 121) The plaintiff also submitted a "Physical Residual Functional Capacity Questionnaire" ("PRFCQ") dated August 29, 2007 (TR 133), and another PRFCQ dated on October 18, 2007, (TR 137).[7] The plaintiff also produced a doctor's report dated August 30, 2007, relating to the automobile accident of August 11, 2007, which indicated that she had been treated for her "residual neck and back pain" elating to the 2001 auto

---

[6]In *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994), the Fifth Circuit stated in *dicta* that "[n]o jurisprudential authority for the application of a 'harmless error' analysis [in social security disability cases] is cited, and we are aware of none." 36 F.3d at 438. The Court would note that Fifth Circuit social security disability cases prior to *Bowling* have utilized a "harmless error" analysis. *See Morris v. Bowen*, 864 F.2d 333, 334-336 (5th Cir. 1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). This earlier circuit precedent on the issue is controlling under the Fifth Circuit's rule on resolution of intra-circuit conflicts. *E.g.*, *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997).

[7]This PRFCQ related to a papilloma on her lower eyelid, and made no findings concerning plaintiff's physical capacities.

accident, and that the treatment was "off and on." (TR 142) The doctor believed that her new impact injury of August 2007 aggravated her back and neck pain, but recommended only physical therapy and a continuation of her medication. That new report also noted that she had scoliosis and hypertension, and "no other history of any other serious medical illnesses, injuries, or fractures or surgeries." (TR 142) There is no mention of the breast mass, asthma, obesity, or side effects of medication. The radiological report of August 29, 2007, revealed a slight cervical scoliosis, a "relatively narrow 5th lumbar interspace" and scoliosis, and a "degenerative 6th dorsal disc." (TR 153-154)

A review of new evidence is limited to determining whether to remand the case to the Commissioner for consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989); *Nickerson v. Secretary of Health and Human Services,* 894 F.Supp. 279, 284 (E.D. Tex. 1995). Remand is appropriate upon a showing that the evidence is new and material, and that good cause exists for the failure to incorporate the evidence into the record in the prior proceedings. *Bradley v. Bowen*, 809 F. 2d 1054, 1058 (5th Cir. 1987). New evidence would be material if it relates to the relevant time period for which benefits were denied, and must not concern evidence of a subsequently-acquired disability or of the subsequent deterioration of a previously non-disabling condition. *Bradley*, at 1058. New evidence would also be material if there is a reasonable possibility the outcome would have been different for the claimant because of this new evidence. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Haywood*, 888 F.2d at 1471.

In plaintiff's case, the relevant time period covered by the ALJ's decision was July 18, 2005 through April 14, 2007. The ALJ properly considered the evidence that was in front of her at the time of the hearing, a hearing which occurred six months prior to the

14

August 11, 2007, injury. This is the first new medical evidence presented since November 2006, a period of nine (9) months. In order to determine if remand is appropriate, the court must find that the new evidence is material, or there was a reasonable possibility that the new evidence would have changed the outcome for the plaintiff.

The plaintiff has not demonstrated a basis for remand for this additional evidence. Plaintiff makes a conclusory statement that since she was suffering from low back pain in 2007 due to a 2001 car accident, the new car accident of August 11, 2007 is related to the application for benefits at issue in this suit. However, plaintiff has not shown how these treatment records relate back to the relevant time period, or even how they are material evidence. The plaintiff's complaints of lower back pain were discussed in the determination, and considered by the ALJ when she further restricted the plaintiff's RFC based on the plaintiff's hearing testimony. (TR 16) Morever, in finding that plaintiff could perform sedentary work, the ALJ limited the sedentary work to positions which allowed plaintiff to alternate between sitting and standing, a limitation which clearly took into account plaintiff's complaints of lower back pain. Thus, this is not material evidence that relates back to the application for benefits. Also, having fully considered the claimant's actual physical limitations regarding her lower back pain at the time of hearing, there is no reasonable possibility that these new treatment records would have changed the outcome of the Commissioner's final decision.

On the other hand, if the injuries arose after the hearing, or if it is a condition that worsened after the hearing, either of which may be the case here, it is a condition that is outside the relevant time period and therefore not material to the decision under review by this court. In that event, if the plaintiff feels this new condition, either alone or in

combination with her existing impairments, has rendered her disabled, the plaintiff would have to file a new claim for benefits with a new onset date.  As the court has independently reviewed the new evidence for materiality, the court finds no error in this determination by the Commissioner, and there is therefore no basis for remand for consideration of this evidence.

## RECOMMENDATION

Accordingly, it is the recommendation of the magistrate judge that the decision of the Commissioner denying supplemental security income benefits ("SSI") and disability insurance benefits ("DIB") to Regina Ellison be **AFFIRMED** and  plaintiff's complaint be **DISMISSED** with prejudice.

Signed in Baton Rouge, Louisiana, on March 16, 2009.


**MAGISTRATE JUDGE DOCIA L. DALBY**

16

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **REGINA ELLISON** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 08-39-FJP-DLD** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | |

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

      In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in Baton Rouge, Louisiana, on March 16, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**

17